UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ANDREW SIMMERMAN, ) | |
| Individually and as Administrator of ) | |
| ESTATE OF MKS (a minor), et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 5: 14-382-DCR |
| ) | |
| V. ) | |
| ) | |
| ACE BAYOU CORPORATION, et al., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action is pending for consideration of Plaintiffs Andrew Simmerman and Terri Mills's motion for leave to file an Amended Complaint. [Record No. 26] The plaintiffs seek to amend the original Complaint "to state a prima facie case of products liability" against Defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, L.P. (collectively, "Wal-Mart Defendants"). [Record No. 26-1, p. 1] For the reasons outlined below, the motion will be denied.

**I.**

The original Complaint was filed in September 2014 in the Fayette Circuit Court against the Wal-Mart Defendants, Ace Bayou Corp., Richard Davis, Murray Valene, and Teresa Spears. [Record No. 1-1] The plaintiffs claim that the defendants designed, manufactured, and sold a defective bean-bag chair that caused the tragic death of three-year-old MKS on September 12, 2012. [*Id.*] On September 30, 2014, the defendants removed the action to this Court. [Record No. 1] Because Defendant Teresa Spears was fraudulently

joined as a party by the plaintiffs to avoid federal jurisdiction, this Court dismissed the claims against Spears and cautioned that the plaintiffs' Complaint neglected to properly state a *prima facie* case of products liability against the Wal-Mart Defendants under Kentucky law. [Record No. 22] Attempting to salvage these claims, the plaintiffs filed the pending motion for leave to amend the Complaint. [Record No. 26]

## II.

Amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. Under this Rule, the plaintiffs' opportunity to amend the Complaint as a matter of course has passed. *See* Fed. R. Civ. P. 15(a)(1)(A), (B) (establishing window in which plaintiffs may amend as of right). As a result, the plaintiffs may now amend their Complaint only with the defendants' written consent or the Court's permission. Fed. R. Civ. P. 15(a)(2). Because the defendants oppose the motion for leave to amend, [Record No. 34] the Court must consider whether justice requires that leave be granted. *See* Fed. R. Civ. P. 15(a)(2). This policy is premised on the desirability of hearing the plaintiff's claims on the merits. *Foman v. Davis*, 371 US. 178, 182 (1962). Generally, a plaintiff's motion for leave to amend should be granted absent a justifiable reason, such as avoiding undue delay, repeated failure to cure deficiencies, prejudice to the opposing party, and futility of the amendment. *Riverview Health Inst., LLC v. Med. Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Here, there is no indication of undue delay, bad faith, or dilatory motive. Instead, the Defendants oppose the motion to amend on the basis of futility. [Record No. 34, p. 1]

A motion to amend is futile if the proposed amendment "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417 (6th Cir.

2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)). "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999). The Court will consider only the proposed Amended Complaint, which must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To overcome a Rule 12(b)(6) dismissal, "the complaint's ['f]actual allegations must be enough to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) (citing *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009)).

### III.

Here, the plaintiffs seek to amend their claims of products liability against the Wal-Mart Defendants to avoid Kentucky's "Middleman Statute," KRS § 411.340. In relevant part, the Middleman Statute provides:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340. The statute protects those who merely sell a product and have no relationship to its manufacture or design. *See Parker v. Henry A. Petter Supply Co.*, 165

S.W.3d 474 (Ky. App. 2005). Defendant Ace Bayou manufactured the allegedly defective bean bag chair and Wal-Mart comes within the Middleman Statute's protections.

The plaintiffs' proposed Amended Complaint alleges that the Wal-Mart Defendants knew or should have known about the chair's alleged defect. However, it does not include specific additional facts that would allow the Court to infer that Wal-Mart had "any special knowledge to foresee the ultimate danger any better than the average citizen." *Steele v. Ford Motor Co.*, No. 05-409-KSF, 2007 U.S. Dist. LEXIS 12543, at *2 (E.D. Ky. Feb. 22, 2007) (citing *Funk v. Wagner Machinery*, 710 S.W.2d 860, 862 (Ky. App. 1986)).

The allegations that the plaintiffs seek to add to their Complaint are as follows: (i) Wal-Mart's supplier agreement with Ace Bayou afforded Wal-Mart an opportunity to inspect the manufacturer's facilities and products for compliance with the law; (ii) the supplier agreement required Ace Bayou to notify Wal-Mart of any investigation into its products by a governmental agency; (iii) Wal-Mart previously sold bean-bag chairs that were recalled in 2002; and (iv) the Retail Industry Leaders Association ("RILA") provides members, such as the Wal-Mart defendants, with education and information regarding industry products. [Record No. 26-4, pp. 5-6] The plaintiffs argue that the addition of these allegations would allow the Court to infer that Wal-Mart knew or should have known of the dangerousness of the allegedly defective chair in excess of an average buyer.

Kentucky courts are willing to impose liability upon retailers who knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous. *See, e.g., Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50, 60 (Ky. App. 1999). However, the plaintiffs must "[a]t the very least . . . allege some more specific or special knowledge of dangerousness by the retailer to avoid the protections

-4-

afforded by KRS 411.340." *Weixler v. Paris Co.*, No. 02-390, 2003 U.S. Dist. LEXIS 444, at *2 (W.D. Ky. Jan. 2, 2003). The plaintiffs have failed to do so in this case.

First, the plaintiffs allege that Wal-Mart's supplier agreement with Ace Bayou "implies" that Wal-Mart had an opportunity to inspect "a specimen of the bean bags before placing an order." [Record No. 26-1, p. 5] However, this allegation does not allow the Court to infer that Wal-Mart had "any special knowledge to foresee the ultimate danger any better than the average citizen," as consumers of the product had the same opportunity to inspect the chair before purchasing it. *Steele,* 2007 U.S. Dist. LEXIS 12543, at *2. To maintain a non-frivolous action against a retailer such as Wal-Mart, the plaintiffs must state something more than that the seller bore the same knowledge as the buyer. *See Weixler,* 2003 U.S. Dist. LEXIS at *2. A contrary finding would render the statute's language superfluous; virtually any retailer would be subject to liability merely by selling an item.

Similarly, the plaintiffs contend that the supplier agreement between Ace Bayou and Wal-Mart required Ace Bayou to inform Wal-Mart of any government inquiries or investigations regarding the products. [Record No. 26-4, p. 5] The proposed Amended Complaint includes allegations that a similar case should put Wal-Mart on notice of the allegedly dangerous condition of the chair. [Record No. 26-4, p. 7] Eleven months before MKS' death, a child in Texas died after becoming enclosed in an Ace Bayou brand bean-bag chair. [Record No. 26-1, p. 8] However, the plaintiffs concede that they do not know whether an investigated was made in the Texas case and further neglect to allege that Ace Bayou imparted actual or constructive knowledge of any such investigations to Wal-Mart, stating only that it is "generally the policy" of the Consumer Product Safety Commission to conduct such investigations. [*Id.*] To infer special knowledge from these allegations would

be speculative at best. *See Campbell,* 600 F.3d at 677 (factual allegations must rise to more than a speculative level).

The plaintiffs' third amendment to the Complaint alleges that a 2002 Consumer Products Safety Commission recall of a bean-bag chair should have put Wal-Mart on notice of the dangers of defective chairs. [Record No. 26-4, p. 5] However, the connection between the recall and MKS's allegedly defective chair is feeble at best. The bean-bag subject to the 2002 recall was not only manufactured by a different company, but was only sold in Wal-Mart stores "for several months" in 1999 – three years before the recall. [Record No. 26-1, p. 7] Allegations of an unrelated line of chairs sold by the retailer thirteen years previously and recalled ten years before the present tragedy are inadequate for this Court to impute special knowledge to Wal-Mart.

Finally, the plaintiffs suggest that Wal-Mart's membership in RILA gave it access to "specialized knowledge of industry happenings." [Record No. 26-1, p. 7] The addition of this allegation does nothing to salvage the claims against the Wal-Mart Defendants, as it lacks a suggestion that RILA had any information regarding the allegedly defective Ace Bayou chair and subsequently supplied this information to Wal-Mart. The fact of Wal-Mart's membership in the association alone does not permit an inference that Wal-Mart had or should have had special knowledge of any unreasonably dangerous product.

In summary, the plaintiffs' allegations are insufficient to allow the Court to infer that Wal-Mart had a reason to know any more than the average citizen that the chair was dangerous. *See Funk,* 710 S.W. 2d at 860 (dismissing case against the seller where the record was "void of any facts from which the court could infer that the distributors should have been aware of the product's alleged defect"). Ultimately, a jury may find that the chair

-6-

was unreasonably dangerous or in a defective condition. However, the plaintiffs have failed to sufficiently allege that Wal-Mart had any special knowledge to foresee such a danger. Because the Amended Complaint would be futile, the Court will deny the plaintiffs' motion.

**IV.**

For the reasons outlined above, it is hereby

**ORDERED** that the plaintiffs' motion for leave to amend the Complaint under Fed. R. Civ. P. 15(a)(2) [Record No. 26] is **DENIED**.

This 6th day of January, 2015.

Signed By:
*Danny C. Reeves*   DCR
United States District Judge